DREW, Justice
(dissenting).
It is stated in the opinion by Mr. Chief Justice O’Connell “[w]e agree that F.S. Sec. 92.33, F.S.A. does not apply to workmen’s compensation proceedings, but we cannot agree that the policy expressed therein can be utilized to prevent an employer from testing the truthfulness of a witness by impeachment as was done in this case.” I find nothing in the statute[1] that would preclude its applicability to workmen’s compensation proceedings nor do I find any decision of this Court or any other appellate court in this state so holding. The only decision upon the subject that I am able to find is that of Fendrick v. Faeges, Fla.App.1960, 117 So.2d 858, where the trial court excluded from evidence a statement taken of a plaintiff in a negligence action prior to the institution of suit by counsel for the defendant without furnishing a copy thereof to the person making such statement as required by the statute. The District Court of the Third District sustained the ruling of the trial judge, saying “[cjlearly, this statute makes inadmissible any statement by an injured person relating to his injuries or property damage growing out of an accident until it is shown that a copy of the statement made was furnished to the person making the same.”
The statute enacted in 1951 as Chapter 26482 was obviously designed to prevent the use of written statements taken of an injured party except under the conditions outlined in the statute. We can take judicial knowledge of the fact that written statements by any person made at the time they are given carry far more probative value before a court or jury than oral statements so made. If such statements are to be used as the statute said “in any manner in any civil action relating to the subject matter thereof”, the law provides and common justice requires that the person making such statement shall have an opportunity promptly to examine the same and then register any objection to the accuracy thereof rather than *455 being required at some distant date in the future to pit his memory against a written document taken down and transcribed by a fallible human being.
I think this statute is clearly applicable in compensation cases. In express language it prohibits the use of such statements by an injured party “with respect to any accident”. The use of the words in the statute “in any civil action” does not preclude workmen’s compensation cases from its operation. The rationale and purpose of such statute is clearly applicable to such cases. In most instances where injuries occur to a working man, he is usually without advice of counsel until the matter reaches the point of the filing of a formal claim and it would be manifestly unfair in these sort of proceedings to permit the employer or its carrier to go about taking written statements of the type here involved and then later introducing them in evidence without the defendant having seen said statements or in any way examining them at the time. In the proceedings before the deputy, claimant’s attorney seemed to be of the view that for such statement to be within the ambit of the statute it had to be a signed statement. At one point in the proceedings employer’s counsel stated to the deputy, “Mr. deputy, this not a signed statement”. There is nothing in the statute requiring the same to be signed. In most instances such statements taken by a court reporter are not signed. It is a common practice to waive signatures even in formal proceedings. It is the use of the statement in evidence with the verity usually attached to such a document that is prohibited by the statute unless its requirements are complied with.
The majority opinion proceeds upon the assumption, as I understand it, that the use of the written statement in any respect on cross-examination was prohibited by the deputy. I do not think the record bears this out. The subject first came up upon the cross-examination of the claimant. He was asked, “[d]o you remember on October 5th when a man by the name of Frank McDonald come out to your house with this lady back here and asked you a lot of questions and she wrote them down, do you remember that? A That’s right.” At this point counsel for the claimant objected and the following colloquy ensued:
“MR. WOOD: I object to the use of any statement that was taken before a court reporter on the date stated by Mr. McDonald unless it can be shown that Mr. Munson signed this statement and that prior to such time had also been advised of his right of counsel in a Workmen’s Compensation case and also after I have had an opportunity to, if the Deputy rules that such can be used, I feel that I should have an opportunity to examine the entire record that was taken and if he did sign it to be a necessary predicate to be used as a statement, it certainly can not be used as a deposition. That it must be first shown that he has been furnished a copy of this.
“THE COMMISSIONER: Were you furnished a copy of any statement, Mr. Munson ?
“A No sir.
“MR. McDONALD: Mr. Deputy, this is not a signed statement. That is a conversation that took place between him and an investigator and anything he stated at that time was an admission which is always admissible. There is no rule of law of evidence that requires that limits. * * *
“THE COMMISSIONER: All right, Mr. McDonald, he has testified that he recalled, now you may ask him if there was any conversation that he had with him.
“MR. WOOD: With the lady.
“MR. McDONALD: With Mr. McDonald in the court reporter’s presence who transcribed her notes.
“THE COMMISSIONER: Either one.
*456 “MR. WOOD: He can’t use this statement for cross examination.
“THE COMMISSIONER: No, he can not.
“mr. McDonald :
“Q Do you remember stating to Mr. McDonald ‘Of course, now I had other duties too’ referring to other duties besides payloader ?
“A That’s right.
“MR. WOOD: Your Honor, I will object for the record that the Deputy has ruled that he can not use this for the purpose of cross examination and I think it is obvious to everyone that Mr. McDonald is using this. He is reading from it.
“MR. McDONALD: I can use it, Mr. Deputy.
“THE COMMISSIONER: I have already ruled on this, Mr. McDonald, because the witness was not furnished with a copy of this statement nor has he signed the statement. I will let you question him as to what conversation took place.
“(A discussion which is not audible.)
“MR. McDONALD: But you won’t let me ask him and lay a predicate for it by asking him does he recall making such a statement without a predicate impeaching testimony is questionable, Mr. Deputy. This is a statement made by this man in connection with the matter of this hearing and some of the statement he made may well be inconsistent with his testimony today. Now there is no rule of law that precludes me from cross examining him as to prior inconsistent testimony or statements. Now do I understand you that you hold however that I may not so cross examine?
“THE COMMISSIONER: You may cross examine without reading from the statement, Mr. McDonald. You can ask any questions you want to reading from that statement if you have to. Now he has testified that he had other duties. Let’s go on from there.” (e. s.)
Later when the court reporter was called to the stand by the employer she was asked if on October Sth she did drive out to the claimant’s house and stenographically took down the conversation which ensued between claimant and the insurance adjuster McDonald. To correctly analyze what actually occurred before the deputy, the following excerpts from the record are pertinent :
“MR. McDONALD: To clarify one thing, any written memorandum of material in front of you, was it prepared by you in your own handwriting or shorthand at the time then ?
“A Oh, yes sir.
“MR. McDONALD:
“Q Do you know who had engaged your services ?
“A Yes, Emerson Associates.
“Q They are a firm of independent insurance investigators?
“A That’s correct.
“Q And adjusters, are they not?
“A That’s correct
“Q Miss Peters, at my request have you brought with you your original shorthand notes which you took at the time with you?
“A Yes sir.
“Q Can you properly identify these as being your own notes?
“A Yes sir.
“Q Made at the time?
“A That’s right.
“Q At my request have you looked through those notes to see whether or not there are any questions and answers concerning what Mr. Mun-son was doing on the morning of August 20th, 1965?
*457 “MR. WOOD: Your Honor, I object to this. There has got to be a proper predicate that this conversation took place between the defendant and this witness. There has been no predicate to this point at this time.
“THE COMMISSIONER: Mr. Wood, it couldn’t be hearsay because she has and the claimant testified that she was present and I think she can testify to what she heard.
“MR. WOOD: I would for the record contend that it is hearsay, unless it was between the claimant and a party to this cause.
“THE COMMISSIONER: All right, I will note your objections.
“MR. WOOD: Secondly if the Deputy is going to allow her to testify to what she heard in a conversation between the claimant and anyone else she can’t do so by reading from her notes and I request your honor to instruct the witness to remove those notes from her eyesight.
“THE COMMISSIONER: That is correct but I will allow her to refer to the notes to refresh her memory.
“MR. McDONALD: Mr. Deputy, on that point I would like to very briefly call your Honor’s attention to the fact that any witness who has taken notes contemporaneously that is at the time of such a transaction and who identifies them as having been made by himself at that time in his own handwriting is at perfect liberty to even read them into evidence. That is not hearsay, that is entirely a proper way of doing it.
“THE COMMISSIONER: Mr. McDonald, you are trying to get into evidence something which I will not let you get into evidence otherwise and that is a statement which has not been signed by this claimant and which he has admitted he was not furnished a copy of and I am not going to let you do it. It is improper.
“MR. McDONALD: Very well, Mr. Deputy, as long as the record is perfectly clear on that point, why we understand each other.” (e. s.)
In his compensation order the deputy made the following finding:
“The ehiployer and carrier called as a witness, M. Loretta Peters, Court Reporter, and proffered a statement marked as Exhibit No. 1, which exhibit was objected to and the undersigned reserved ruling upon its admissibility. It is now the ruling of the undersigned that Employer and Carrier’s Exhibit No. 1, should not be received into evidence for the reason that the claimant was not sworn before the Court Reporter nor asked whether he wished to read and sign the statement after the same was transcribed, nor was he requested to sign such a statement nor did he sign such a statement and further, was not furnished with a copy of said statement.”
I think it clear from the foregoing that the employer was in no way prejudiced or handicapped in his legitimate cross-examination or his effort to impeach the claimant’s testimony. The commissioner did not in any way. restrict employer’s counsel in legitimate impeachment procedure. He did uphold the rationale and I think the clear requirements of the statute and in doing so, he prevented what the statute was obviously designed to prevent and that is the unfair use of written statements of an injured party without affording the injured party a chance to promptly examine such statement and protect himself against any erroneous statements made therein.
I think the deputy was correct in his actions with respect to the use of this written statement; that his compensation order is fully supported by competent substantial evidence and that the full commission was eminently correct in unanimously approving that order without comment.

. “92.33 Written statement concerning injury to person or property; admission as evidence. — Every person who shall take a written statement by any injured person with respect to any accident or with respect to any injury to person or property shall, at the time of taking such statement, furnish to the person making such statement a true and complete copy thereof. Any person having taken, or having possession of any written statement or a copy of such statement, by any injured person with respect to any accident or with respect to any injury to person or property shall, at the request of the person who made such statement or his personal representative, furnish the person who made such statement or his personal representative a true and complete copy thereof. No written statement by an injured person shall be admissible in evidence or otherwise used in any manner in any civil action relating to the subject matter thereof unless it shall be made to appear that a true and complete copy thereof was furnished to the person making such statement at the time of the making thereof, or, if it shall be made to appear that thereafter a person having possession of such statement refused, upon request of the person who made the statement or his personal representatives to furnish him a true and complete copy thereof.”